**LITE DEPALMA GREENBERG, LLC**
Allyn Z. Lite
  (alite@litedepalma.com)
Joseph J. DePalma
  (jdepalma@litedepalma.com)
Mayra V. Tarantino
  (mtarantino@litedepalma.com)
Two Gateway Center, Suite 1201
Newark, New Jersey  07102
Telephone: (973) 623-3000
Facsimile: (973) 623-0858

*Proposed Liaison Counsel for the Class*

**LABATON SUCHAROW LLP**
Christopher J. Keller
  (ckeller@labaton.com)
Michael W. Stocker
  (mstocker@labaton.com)
Rachel A. Avan
  (ravan@labaton.com)
140 Broadway
New York, New York  10005
Telephone: (212) 907-0700
Facsimile: (212) 818-0477

*Attorneys for the Frankfurt Funds and
Proposed Lead Counsel for the Class*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

*DOCUMENT ELECTRONICALLY FILED*

| | |
|---|---|
| RONALD MONK, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>JOHNSON & JOHNSON, WILLIAM C. WELDON, DOMINIC J. CARUSO, and PETER LUTHER,<br><br>Defendants. | Case No. 3:10-cv-4841-FLW-DEA<br><br>Hon. Freda L. Wolfson<br><br><br>Return Date: December 20, 2010<br>Oral Argument Requested |

## MEMORANDUM OF LAW IN SUPPORT OF THE MOTION OF THE FRANKFURT FUNDS FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF SELECTION OF COUNSEL

# **TABLE OF CONTENTS**

TABLE OF CONTENTS ......................................................................................... i

TABLE OF AUTHORITIES ................................................................................ ii

PRELIMINARY STATEMENT .......................................................................... 1

FACTUAL BACKGROUND ............................................................................... 5

ARGUMENT ........................................................................................................ 8

I.    THE FRANKFURT FUNDS SHOULD
BE APPOINTED LEAD PLAINTIFF ....................................................... 8

    A.  The PSLRA Standard for Appointing Lead Plaintiff ............................ 8

    B.  The Frankfurt Funds Are the "Most Adequate Plaintiff" .................... 10

        1.  The Frankfurt Funds Have Satisfied
the PSLRA's Procedural Requirements ......................................... 10

        2.  The Frankfurt Funds Have the Largest
Financial Interest in the Outcome of the Action ........................... 10

        3.  The Frankfurt Funds Satisfy Rule 23's
Typicality and Adequacy Requirements ........................................ 11

            (a)  The Frankfurt Funds' Claims
Are Typical of Those of the Class ........................................... 12

            (b)  The Frankfurt Funds Will Fairly and
Adequately Protect the Interests of the Class ......................... 14

        4.  THE FRANKFURT FUNDS ARE
PRECISELY THE TYPE OF LEAD
PLAINTIFF ENVISIONED BY THE PSLRA ............................... 15

II.  THE COURT SHOULD APPROVE THE
FRANKFURT FUNDS' CHOICE OF COUNSEL .................................. 16

CONCLUSION ................................................................................................... 18

# TABLE OF AUTHORITIES

## FEDERAL CASES

*In re Able Labs. Sec. Litig.*,
    425 F. Supp. 2d 562 (D.N.J. 2006)....................................................................12

*In re Cendant Corp. Litig.*,
    264 F.3d 201 (3d Cir. 2001) .................................................... *passim*

*City of Roseville Employees' Ret. Sys. v. Horizon Lines, Inc.*,
    Civ. A. No. 08-969, 2009 WL 1811067 (D. Del. June 18, 2009) ......................11

*Fields v. Biomatrix, Inc.*,
    198 F.R.D. 451 (D.N.J. 2000)...........................................................................12

*In re Molson Coors Brewing Co. Sec. Litig.*,
    233 F.R.D. 147 (D. Del. 2005) ....................................................................12, 13

*Morrison v. Nat'l Australia Bank Ltd.*,
    130 S. Ct. 2869 (2010)........................................................................................3

*In re NPS Pharms., Inc. Sec. Litig.*,
    No. 2:06-cv-570, 2006 WL 6627948 (D. Utah Nov. 17, 2006) .........................12

*In re Vonage Initial Pub. Offering (IPO) Sec. Litig.*,
    Civ. A. No. 07-177 (FLW), 2007 WL 2683636 (D.N.J. Sept. 7, 2007).............13

*In re Waste Mgmt., Inc. Sec. Litig.*,
    128 F. Supp. 2d 401 (S.D. Tex. 2000)..............................................................17

## DOCKETED CASES

*In re Able Labs. Sec. Litig.*,
    No. 05-2681 (JAG), slip op. (D.N.J. Mar.17, 2006)...........................................13

*In re Am. Int'l Group, Inc. Sec. Litig.*,
    No. 04-cv-8141 (S.D.N.Y.)................................................................................16

*In re AremisSoft Corp. Sec. Litig.*,
  No. 01-cv-2486-JAP (D.N.J.) ...................................................................18

*In re BankAtlantic Bancorp, Inc. Sec. Litig.*,
  No. 07-cv-61542, Trial Tr. (S.D. Fla.)......................................................16

*In re Bristol-Myers Squibb Sec. Litig.*,
  No. 00-cv-1990-GEB (D.N.J.) ...................................................................17

*In re Countrywide Fin. Corp. Sec. Litig.*,
  No. 07-cv-5295 (C.D. Cal.) ........................................................................17

*In re Lucent Techs. Sec. Litig.*,
  No. 00-cv-621-JAP (D.N.J.) .......................................................................17

*In re Monster Worldwide, Inc. Sec. Litig.*,
  No. 07-cv-2237, Hr'g Tr. (S.D.N.Y. June 14, 2007).................................17

*Princeton Econ. Group v. AT&T Co.*,
  No. MER-L-3221-91 (N.J. Super. Ct., Mercer Cty.)................................18

*Steiner v. MedQuist*,
  No. 04-cv-05487-JBS (D.N.J.) ...................................................................18

*In re Tellium Sec. Litig.*,
  No. 02-cv-5878-FLW (D.N.J.) ...................................................................18

*Varacallo v. Mass. Mut. Life Ins. Co.*,
  No. 04-cv-2702-JLL (D.N.J.) ......................................................................18

## FEDERAL STATUTES

15 U.S.C. § 78u-(4) *et seq.*............................................................. *passim*

Fed. R. Civ. P. 23(a)..........................................................................11, 13

## MISCELLANEOUS

H.R. Rep. No. 104-369 (1995) (Conf. Rep.),
  *reprinted in* 1995 U.S.C.A.A.N. 730 ....................................................................4

S. Rep. No. 104-98 (1995),
  *reprinted in* 1995 U.S.C.A.A.N. 679 ....................................................................4

FRANKFURT-TRUST Investment GmbH ("Frankfurt-Germany") and

FRANKFURT-TRUST Investment Luxemburg AG ("Frankfurt-Luxemburg")

(collectively, "the Frankfurt Funds") respectfully submit this Memorandum of Law

pursuant to Section 21D(a)(3) of the Securities Exchange Act of 1934 (the

"Exchange Act"), 15 U.S.C. § 78u-4(a)(3), as amended by the Private Securities

Litigation Reform Act of 1995 (the "PSLRA"), in support of their motion for the

entry of an order: (1) appointing the Frankfurt Funds as Lead Plaintiff for a Class

of purchasers and acquirers of Johnson & Johnson ("J&J" or the "Company")

securities from October 14, 2008 through July 21, 2010, inclusive (the "Class

Period") in the above-captioned matter (the "Action");  (2) approving the Frankfurt

Funds' selection of Labaton Sucharow LLP ("Labaton Sucharow") as Lead

Counsel for the Class and Lite DePalma Greenberg, LLC ("Lite DePalma") as

Liaison Counsel for the Class; and (3) granting such other and further relief as the

Court may deem just and proper.

## PRELIMINARY STATEMENT

Pending before the Court is a securities class action brought against: Johnson

& Johnson ("J&J"), one of the largest healthcare products companies in the world;

William C. Weldon, J&J's Chairman and Chief Executive Officer since April

2002; Dominic J. Caruso, J&J's Vice President, Finance and Chief Financial

Officer since January 2007; and Peter Luther, President of McNeil Consumer

Healthcare ("McNeil CH")[1] (collectively, "Defendants").  The Action alleges

violations of Sections 10(b) and 20(a) of the Exchange Act and U.S. Securities and

Exchange Commission Rule 10b-5 ("Rule 10b-5") promulgated thereunder.

During the Class Period, J&J is alleged to have repeatedly failed to disclose

grave and widespread internal control and manufacturing problems that led to

formal product recalls, a massive secret recall conducted by the Company itself, a

plant shutdown, and government investigations.  Specifically, the Action alleges

that throughout the Class Period, J&J failed to disclose information well known to

Company management but not to the public, including: (1) manufacturing

deficiencies at its facilities in Fort Washington, New Jersey (the "Fort Washington

facility"), Las Piedras, Puerto Rico (the "Las Piedras facility"), and Lancaster,

Pennsylvania (the "Lancaster facility"); (2) a covert recall of certain Motrin

products not authorized by the United States Food and Drug Administration (the

"FDA");[2] and (3) widespread consumer complaints regarding over-the-counter

("OTC") medicines containing a musty odor or dark specks of foreign material.

When this previously undisclosed information was finally made available to the

---

[1] McNeil CH is a division of McNeil-PPC, Inc., which is a wholly-owned
subsidiary of J&J.
[2] During the Class Period, J&J performed a "silent recall" or "phantom recall" by
hiring third-party contractors to go to points of purchase (such as drug stores) and
purchase all of the product on the shelf.  The contractors were instructed to behave
like normal customers and not disclose that the product was being recalled.

public, J&J's stock dropped in response, causing the Class to incur hundreds of millions of dollars in losses.

Pursuant to the Exchange Act, as amended by the PSLRA, and for the reasons set forth below, the Frankfurt Funds respectfully submit that they should be appointed Lead Plaintiff on behalf of purchasers and acquirers of J&J securities during the Class Period who incurred damages as a result of the Defendants' alleged violations of the federal securities laws.

Like the other members of the Class, Frankfurt-Germany, based in Germany, and Frankfurt-Luxemburg, based in Luxembourg, suffered losses as a result of a decline in the share price of the J&J stock they purchased on the New York Stock Exchange (the "NYSE") in the United States. Notably, the U.S. Supreme Court's "transactional test" for determining whether an investor can pursue Exchange Act claims in a U.S. court is satisfied when a plaintiff purchases shares on a U.S. stock exchange. *See Morrison v. Nat'l Australia Bank Ltd.*, 130 S. Ct. 2869, 2886 (2010). Accordingly, the Frankfurt Funds meet *Morrison*'s transactional test, and their Exchange Act claims can be heard by the Court.

As set forth in detail below, the Frankfurt Funds lost $666,917, as calculated under the last-in-first-out ("LIFO") loss calculation methodology, on their investments in J&J common stock during the Class Period. Copies of the PSLRA-required Certifications submitted by Frankfurt-Germany and Frankfurt-Luxemburg

are attached as Exhibit A to the accompanying Declaration of Rachel A. Avan ("Avan Decl.").  These Certifications set forth all of the Frankfurt Funds' transactions in J&J common stock during the Class Period.  In addition, a chart reflecting the calculation of the Frankfurt Funds' financial losses on J&J common stock purchased during the Class Period is attached as Exhibit B to the Avan Declaration.  In light of the significant transactions and losses reflected in these exhibits, the Frankfurt Funds have a substantial financial interest in the relief sought by this litigation—an interest believed to be greater than that of any competing movant.  The Frankfurt Funds also meet the typicality and adequacy requirements of Rule 23 of the Federal Rules of Civil Procedure ("Rule 23") because their claims are typical of those of the absent Class, and they will fairly and adequately represent the interests of the Class.

Furthermore, because they are sophisticated institutional investors that suffered losses on J&J securities like the other Class members, the Frankfurt Funds are well-suited to pursue litigation that is in the best interests of the Class.  Indeed, the PSLRA's legislative history shows that large, sophisticated institutional investors like the Frankfurt Funds are precisely the type of investors whose participation in securities class actions the PSLRA was meant to foster.  *See* H.R. Rep. No. 104-369 at 34 (1995) (Conf. Rep.), *reprinted in* 1995 U.S.C.A.A.N. 730, 733; S. Rep. No. 104-98 at 6 (1995), *reprinted in* 1995 U.S.C.A.A.N. 679, 685.  In

short, the Frankfurt Funds are the "most adequate plaintiff" and should be appointed Lead Plaintiff.

Finally, pursuant to the PSLRA, the Frankfurt Funds request the Court appoint their choice of Labaton Sucharow as Lead Counsel and Lite DePalma as Liaison Counsel on behalf of the Class.  Both firms are eminently qualified and have extensive experience in the prosecution of securities fraud claims such as the ones asserted in the Action.

## FACTUAL BACKGROUND

A complaint was filed against J&J in this Court on September 21, 2010, asserting claims under Sections 10(b) and 20(a) of the Exchange Act and Rule 10b-5 promulgated thereunder.  Specifically, the complaint alleges that during the Class Period, J&J failed to disclose the following information: (1) beginning around April 2008, J&J received numerous consumer complaints that Tylenol products made at the Las Piedras facility exhibited a "musty" odor that the Company failed to adequately investigate and about which it did not timely notify the FDA; (2) J&J failed to take corrective action when foreign materials and contamination were found in the Fort Washington facility from May 2009 to April 2010—problems that had given rise to 46 separate complaints; and (3) J&J secretly undertook a phantom recall of Motrin products when it learned of defects in those medications in late 2008.

J&J, which was founded in 1886, is a global, American healthcare giant.[3] The Company includes more than 250 subsidiaries (called the "Family of Companies" by J&J).  McNeil HC, the largest consumer company within the J&J Family of Companies, manufactures many of J&J's OTC products, including pain relievers such as Tylenol and Motrin and allergy medications like Benadryl and Zyrtec.  J&J's products are regulated by the FDA.

Throughout the Class Period, J&J's persistent quality, purity, and potency problems with medications produced at its Fort Washington facility, Las Piedras facility, and Lancaster facility were concealed from the public and not factored into the Company's earnings and sales outlook.

According to the complaint, the falsity of J&J's representations came to light through a series of corrective disclosures.  On April 30, 2010, McNeil CH announced the largest recall of children's medicine in history—40 products, including some varieties of infant and children's Tylenol, Motrin, Zyrtec, and Benadryl—"because some of these products may not meet required quality standards."  Following this disclosure, J&J's shares fell $0.71 per share, or 1 percent, to close at $64.30.

---

[3] J&J is a New Jersey corporation with headquarters in New Brunswick, New Jersey.  J&J's common stock trades on the NYSE under the ticker symbol "JNJ" and is a component of the Dow Jones Industrial Average.

Additional misrepresentations exposed by government investigations also affected the Company's stock price.  On May 5, 2010, U.S. House of Representatives Committee on Oversight and Government Reform ("OGR Committee") Chairman Edolphus "Ed" Towns (D-NY) and Ranking Member Darrell Issa (R-CA) announced that the OGR Committee had opened an investigation into the circumstances surrounding McNeil's recall of children's medication.  The OGR Committee noted that the FDA and McNeil CH had provided "conflicting accounts of the circumstances surrounding the recall, including what prompted the recall and how serious the recall is."  The complaint alleges that as a result of this news, J&J's shares declined on May 6, 2010 by $1.14 per share, or 2.6 percent, to close at $63.40.  Thereafter in response to information received in connection with the May 27, 2010 hearing dedicated to J&J's internal control issues, on June 2, 2010, the OGR Committee announced it had expanded its investigation to include J&J's 2008 phantom recall of Motrin.  Following this news, the Complaint alleges that J&J's stock declined $1.76 per share, or 2.9 percent, to close at $58.01 on June 4, 2010.

When the Company held a conference call for investors on July 20, 2010 and discussed the impact of McNeil's product recalls and the shutdown of the Fort Washington facility on J&J's earnings, J&J's stock fell $0.99 per share, or 1.6 percent, to close at $58.58.  The next day, on July 21, 2010, the FDA issued a

report critical of J&J's internal controls, including problems at its Lancaster

facility and its lagging approach toward producing information requested by the

FDA.  As a result of this news, J&J's stock declined by $1.46 per share, or 2.4

percent, to close at $57.12.

The Company's conduct and the revelations thereof have caused J&J's

shareholders to lose hundreds of millions of dollars.

## ARGUMENT

**I.    THE FRANKFURT FUNDS SHOULD
      BE APPOINTED LEAD PLAINTIFF**

### A.    The PSLRA Standard for Appointing Lead Plaintiff

The PSLRA provides a straightforward, sequential procedure for selecting

lead plaintiff for "each private action arising under [the Exchange Act] that is

brought as a plaintiff class action pursuant to the Federal Rules of Civil

Procedure."  *See* 15 U.S.C. § 78u-4(a)(l); *see also* 15 U.S.C. § 78u-4(a)(3)(B).

First, Section 21D(a)(3)(A)(i) of the Exchange Act, as amended by the PSLRA,

specifies that:

> Not later than 20 days after the date on which the
> complaint is filed, the plaintiff or plaintiffs shall cause to
> be published, in a widely circulated national business-
> oriented publication or wire service, a notice advising
> members of the purported plaintiff class --
>
> (I)     of the pendency of the action, the claims asserted
> therein, and the purported class period; and

> (II)    that, not later than 60 days after the date on which
> the notice is published, any member of the purported
> class may move the court to serve as lead plaintiff of the
> purported class.

15 U.S.C. § 78u-4(a)(3)(A)(i).

Next, under the PSLRA, a court is to consider any motion made by class

members and appoint the movant that the court determines to be most capable of

adequately representing the interests of the class as lead plaintiff.  Specifically, the

PSLRA provides that a court:

> shall appoint as lead plaintiff the member or members of
> the purported plaintiff class that the court determines to
> be most capable of adequately representing the interests
> of class members (. . . the "most adequate plaintiff") . . . .

15 U.S.C. § 78u-4(a)(3)(B)(i).

In adjudicating a lead plaintiff motion, a court shall adopt a presumption that

the "most adequate plaintiff" is the person or group of persons who: (1) filed a

complaint or made a motion to serve as lead plaintiff; (2) has the largest financial

interest in the relief sought by the class; and (3) who otherwise satisfies the

requirements of Rule 23.  *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I); *see also In re*

*Cendant Corp. Litig.*, 264 F.3d 201, 222 (3d Cir. 2001).  This presumption may be

rebutted by proof that the presumptively most adequate plaintiff "will not fairly

and adequately protect the interests of the class" or "is subject to unique defenses

that render such plaintiff incapable of adequately representing the class."  15

U.S.C. § 78u-4(a)(3)(B)(iii)(II); *see also Cendant*, 264 F.3d at 222.

**B.     The Frankfurt Funds Are the "Most Adequate Plaintiff"**

The Frankfurt Funds respectfully submit that they are the presumptively

"most adequate plaintiff" because they have complied with PSLRA procedural

requirements, hold the largest financial interest of any movant, and satisfy Rule

23's typicality and adequacy requirements.

**1.     The Frankfurt Funds Have Satisfied
the PSLRA's Procedural Requirements**

The Frankfurt Funds filed this motion to serve as lead plaintiff in a timely

manner.  Pursuant to 15 U.S.C. § 78u-4(a)(3)(A)(i), the first plaintiff to file a

complaint in the Action caused notice regarding the pending nature of this case to

be published on *PR Newswire*, a widely-circulated, national, business-oriented

news reporting service, on September 21, 2010.  *See* Avan Decl. Ex. C.  Thus, as

permitted by the PSLRA, any person who is a member of the proposed Class may

apply to be appointed lead plaintiff within sixty (60) days after publication of the

notice, *i.e.*, on or before November 22, 2010.  The Frankfurt Funds have filed their

motion within the required period.

**2.     The Frankfurt Funds Have the Largest
Financial Interest in the Outcome of the Action**

The PSLRA instructs the Court to adopt a rebuttable presumption that the

"most adequate plaintiff" for lead plaintiff purposes is the movant with the largest

financial interest in the relief sought by the class, so long as the movant meets the requirements of Rule 23.  See 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

During the Class Period, the Frankfurt Funds suffered substantial losses of $666,917 calculated under the LIFO method of accounting for purchases and sales. *See* Loss Analysis, Avan Decl. Ex. B.  The Frankfurt Funds are presently unaware of any other movant with a larger financial interest in the outcome of the Action. Consequently, and because they also satisfy Rule 23's typicality and adequacy requirements, the Frankfurt Funds are entitled to the legal presumption that they are the most adequate plaintiff.

### 3. The Frankfurt Funds Satisfy Rule 23's Typicality and Adequacy Requirements

In addition to the largest financial interest requirement, the PSLRA also directs that the lead plaintiff must "otherwise satisf[y] the requirements of Rule 23 . . . ."  15 U.S.C. § 78u-(4)(a)(3)(B)(iii)(I)(cc).  With respect to class certification, Rule 23(a) requires that: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) such claims are typical of those of the class; and (4) the representative will fairly and adequately protect the interests of the class.  Fed. R. Civ. P. 23(a). However, at the lead plaintiff selection stage, all that is required is a preliminary showing that the lead plaintiff's claims are typical and adequate.  *See, e.g.,City of Roseville Employees' Ret. Sys. v. Horizon Lines, Inc.*, Civ. A. No. 08-969, 2009

WL 1811067, at *2 (D. Del. June 18, 2009) (holding that typicality and adequacy are the only relevant prerequisites to lead plaintiff selection under the PSLRA) (citing *Cendant*, 264 F.3d at 263-65).

### (a)   The Frankfurt Funds' Claims Are Typical of Those of the Class

Under Rule 23(a)(3), the claims or defenses of the representative party must be typical of those of the class. Typicality exists if the circumstances of the movant with the largest financial loss are not "markedly different" from those of the Class and the legal theory upon which that movant's claims are based do not "differ[] from that upon which the claims of other class members will perforce be based." *Cendant*, 264 F.3d at 265 (internal quotations and citations omitted); *see also In re Able Labs. Sec. Litig.*, 425 F. Supp. 2d 562, 567 (D.N.J. 2006) (Greenway, J.). Notably, the claims of the Lead Plaintiff need not be identical to the claims of the class to satisfy typicality. *See In re Molson Coors Brewing Co. Sec. Litig.*, 233 F.R.D. 147, 152 (D. Del. 2005) ("typicality . . . does not require that all putative class members share identical claims") (internal quotations and citations omitted); *Fields v. Biomatrix, Inc.*, 198 F.R.D. 451, 456 (D.N.J. 2000) ("Typical . . . does not mean identical.") (Bassler, J.).

The typicality requirement is plainly satisfied here because the Frankfurt Funds, which are not subject to any unique or special defenses,[4] seek the same relief and advance the same legal theories as other Class members.  Like all members of the Class, the Frankfurt Funds: (1) purchased or acquired J&J securities during the Class Period; (2) at prices artificially inflated by Defendants' misrepresentations and omissions; and (3) suffered damages as a result.  *See In re Vonage Initial Pub. Offering (IPO) Sec. Litig.*, Civ. A. No. 07-177 (FLW), 2007 WL 2683636, at *6 (D.N.J. Sept. 7, 2007) (discussing the typicality requirement). These shared claims, which are based on the same legal theory and arise from the same events and course of conduct as the Class' claims, satisfy Rule 23(a)(3)'s typicality requirement.

---

[4] The fact that the Frankfurt Funds are foreign investors in no way affects their ability to adequately represent the Class.  This is especially true given that the Frankfurt Funds' purchases occurred on the NYSE.  *See In re NPS Pharms., Inc. Sec. Litig.*, No. 2:06-cv-570, 2006 WL 6627948, at *3-4 (D. Utah Nov. 17, 2006) (rejecting argument that foreign institutional investor that bought shares of a U.S. company on a U.S. exchange may be subject to the unique defenses of subject matter jurisdiction and res judicata).  Courts across the country have frequently appointed foreign investors lead plaintiffs in putative securities class actions.  *See, e.g.*, *Molson Coors*, 233 F.R.D. at 151 (observing that a foreign lead plaintiff movant was "correct in its assertion that many courts . . . have approved foreign investors as lead plaintiffs in cases such as this" and holding that a group of investors led by a German investment firm was entitled to appointment as lead plaintiff because it had the largest financial interest of any movant, was otherwise adequate and typical, and would not be subject to unique defenses because of its foreign status).  *See also In re Able Labs. Sec. Litig.*, No. 05-2681 (JAG), slip op. at 2 (D.N.J. Mar. 17, 2006), Avan Decl. Ex. D (foreign investor appointed as lead plaintiff).

**(b)     The Frankfurt Funds Will Fairly and
<u>Adequately Protect the Interests of the Class</u>**

The adequacy of representation requirement of Rule 23(a)(4) is satisfied

when a representative party establishes that it "will fairly and adequately protect

the interests of the class."  Fed. R. Civ. P. 23(a)(4).  Representation is adequate

when: (1) the movant "has the ability and incentive to represent the claims of the

class vigorously," (2) there is no "conflict between [the movant's] claims and those

asserted on behalf of the class," and (3) the movant has "obtained adequate

counsel . . . ."  *Cendant*, 264 F.3d at 265.

The Frankfurt Funds will fairly and adequately represent the interests of the

proposed Class.  No antagonism exists between the Frankfurt Funds' interests and

those of the absent Class members; rather, the interests the Frankfurt Funds and

Class members are squarely aligned.  In addition, the Frankfurt Funds have

retained counsel highly experienced in prosecuting securities class actions

vigorously and efficiently, and have timely submitted their choice to the Court for

approval, in accordance with the PSLRA.  *See* 15 U.S.C. §§ 78u-4(a)(3)(A)(i)(II)

and (B)(v).  The Frankfurt Funds suffered substantial losses due to Defendants'

alleged fraud and, therefore, have a sufficient interest in the outcome of this case to

ensure vigorous prosecution of the Action.  Accordingly, the Frankfurt Funds

satisfy the adequacy requirement.

## 4.   THE FRANKFURT FUNDS ARE PRECISELY THE TYPE OF LEAD PLAINTIFF ENVISIONED BY THE PSLRA

In addition to satisfying the requirements of Rule 23, the Frankfurt Funds, as large, sophisticated institutional investors, are the type of investors Congress sought to encourage to assume a more prominent role in securities litigation with the enactment of the PSLRA's lead plaintiff provisions.  Congress noted in its PSLRA Statement of Managers Report that the PSLRA was formulated "to increase the likelihood that institutional investors will serve as lead plaintiff[]," in part, because "[i]nstitutional investors and other class members with large amounts at stake will represent the interests of the plaintiff class more effectively than class members with small amounts at stake."  *Cendant*, 264 F.3d at 244, 264 (quoting H.R. Rep. No. 104-369 at 34, *reprinted in* 1995 U.S.C.C.A.N. at 733).

Established in 1969, Frankfurt-Germany is a professional asset manager. Frankfurt-Germany is based in Frankfurt, Germany, and is a wholly-owned subsidiary of BHF-Bank in Frankfurt am Main, a leading private bank in Germany. Frankfurt-Luxemburg is a professional asset manager and also a subsidiary of BHF-Bank International.  Together, the Frankfurt Funds have €16.2 billion assets under management.

The Frankfurt Funds are sophisticated institutional investors with sufficient resources to adequately litigate the Action and supervise Class counsel.  The

Frankfurt Funds understand the fiduciary duties of a lead plaintiff, are willing to oversee the vigorous prosecution of the Action, and have pledged to "provid[e] testimony at deposition and trial, if necessary."  *See* Certifications, Avan Decl. Ex. A.  Thus, as demonstrated herein, the Frankfurt Funds are the very personification of the lead plaintiff contemplated by the PSLRA.

## II.    THE COURT SHOULD APPROVE THE FRANKFURT FUNDS' CHOICE OF COUNSEL

The PSLRA vests authority in the lead plaintiff to select and retain lead counsel for the class, subject to the court's approval.  *See* 15 U.S.C. § 78u-4(a)(3)(B)(v).  "[T]he court should generally employ a deferential standard in reviewing the lead plaintiff's choices."  *Cendant*, 264 F.3d at 274.  The Frankfurt Funds have selected Labaton Sucharow to serve as Lead Counsel for the Class and Lite DePalma to serve as Liaison Counsel for the Class.

Labaton Sucharow has excelled as lead counsel in numerous important actions on behalf of defrauded investors.  Only last week, Labaton Sucharow, as class counsel for a certified class of investors, secured a favorable jury verdict in a securities fraud suit brought against BankAtlantic and several of its officers.  *See In re BankAtlantic Bancorp, Inc. Sec. Litig.*, No. 07-cv-61542, Trial Tr. at 4350:8-4364:10 (S.D. Fla. Nov. 18, 2010).  Labaton Sucharow is also lead counsel in *In re American International Group, Inc. Securities Litigation*, No. 04-cv-8141 (S.D.N.Y.), in which it recently achieved settlements in principle totaling

- 16 -

approximately $1 billion.  In addition, Labaton Sucharow is lead counsel in *In re Countrywide Financial Corp. Securities Litigation*, No. 07-cv-5295 (C.D. Cal.), which resulted in a settlement in principle of $624 million, the largest subprime-related securities class action settlement achieved to date.  Labaton Sucharow served as lead counsel in the Waste Management securities litigation, which resulted in a settlement of $457 million, one of the largest common-fund securities class action settlements ever achieved at the time.  *See In re Waste Mgmt., Inc. Sec. Litig.*, 128 F. Supp. 2d 401, 432 (S.D. Tex. 2000) (stating that Labaton Sucharow "ha[s] been shown to be knowledgeable about and experienced in federal securities fraud class actions"); *see also* Labaton Sucharow Firm Resume, Avan Decl. Ex. E. Also, Labaton Sucharow is currently serving as lead or co-lead counsel in the securities fraud cases against HealthSouth, Bear Stearns, Fannie Mae, Satyam, and others.  In *In re Monster Worldwide, Inc. Securities Litigation*, No. 07-cv-2237, Hr'g Tr. at 24:25-25:1 (S.D.N.Y. June 14, 2007), Judge Jed S. Rakoff appointed Labaton Sucharow as lead counsel, stating that "the Labaton firm is very well known to . . . courts for the excellence of its representation."

Lite DePalma's recent successes in securities class action litigation include serving as liaison counsel in a number of cases, including: *In re Bristol-Myers Squibb Securities Litigation*, No. 00-cv-1990-GEB (D.N.J.) ($185 million settlement); *In re Lucent Technologies Securities Litigation*, No. 00-cv-621-JAP

- 17 -

(D.N.J.) ($610 million settlement); *In re AremisSoft Corp. Securities Litigation*, No. 01-cv-2486-JAP (D.N.J.) (in ongoing action, over $250 million recovered to date); *Steiner v. MedQuist*, No. 04-cv-05487-JBS (D.N.J.) ($7.75 million); and *In re Tellium Securities Litigation*, No. 02-cv-5878-FLW (D.N.J.) ($5.5 million). Apart from securities cases, other major class actions in which Lite DePalma has served as lead or co-lead counsel include *Varacallo v. Massachusetts Mutual Life Insurance Co.*, No. 04-cv-2702-JLL (D.N.J.) ($768 million settlement for nationwide insurance sales practices class after nine years of litigation), and *Princeton Economics Group v. AT&T, Co.*, No. MER-L-3221-91 (N.J. Super. Ct., Mercer Cty.) ($85 million nationwide consumer class action settlement). *See* Lite DePalma Firm Resume, Avan Decl. Ex. F.

## **CONCLUSION**

For the foregoing reasons, the Frankfurt Funds respectfully request that the Court: (1) appoint the Frankfurt Funds as Lead Plaintiff; (2) approve their selection of Labaton Sucharow LLP as Lead Counsel for the Class and Lite DePalma as Liaison Counsel for the Class; and (3) grant such other and further relief as the Court may deem just and proper.

Dated: November 22, 2010

Respectfully submitted,

**LITE DEPALMA GREENBERG, LLC**

By:  */s/ Joseph J. DePalma*

Joseph J. DePalma
    (jdepalma@litedepalma.com)
Allyn Z. Lite
    (alite@litedepalma.com)
Mayra V. Tarantino
    (mtarantino@litedepalma.com)
Two Gateway Center, Suite 1201
Newark, New Jersey  07102
Telephone: (973) 623-3000
Facsimile: (973) 623-0858

*Proposed Liaison Counsel for the Class*

**LABATON SUCHAROW LLP**
Christopher J. Keller
    (ckeller@labaton.com)
Michael W. Stocker
    (mstocker@labaton.com)
Rachel A. Avan
    (ravan@labaton.com)
140 Broadway
New York, New York  10005
Telephone: (212) 907-0700
Facsimile: (212) 818-0477

*Attorneys for the Frankfurt Funds and
Proposed Lead Counsel for the Class*