UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

RONALD MONK, Individually and on Behalf of
All Others Similarly Situated,

      Plaintiff,

vs.

JOHNSON & JOHNSON, WILLIAM C.
WELDON, DOMINIC J. CARUSO, COLLEEN
A. GOGGINS and PETER LUTHER,

      Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

Civil Action No. 10-4841 (FLW)
(DEA)

# DEFENDANTS' REPLY MEMORANDUM OF LAW
## IN SUPPORT OF THEIR MOTION TO DISMISS
## PLAINTIFF'S SECOND AMENDED COMPLAINT

COVINGTON & BURLING LLP
The New York Times Building
620 Eighth Avenue
New York, New York 10018

PATTERSON BELKNAP
WEBB & TYLER LLP
1133 Avenue of the Americas
New York, New York 10036

*Attorneys for Defendants*

Table of Contents

Preliminary Statement ........................................................................................... 1

Argument ............................................................................................................... 2

I.   Mr. Caruso's Statements About Shipping Levels Are Not Actionable .......... 2

   A.   Plaintiff Does Not Allege Loss Causation. .......................................... 2

   B.   Mr. Caruso's Statements About Shipping Levels Were Accurate .................................................................................................. 4

   C.   Plaintiff Does Not Adequately Allege Scienter. .................................. 6

II.  Mr. Caruso's Statement About Financial Impact Is Not Actionable. ............ 6

   A.   The PSLRA's Safe-Harbor Provision for Forward-Looking Statements Protects Mr. Caruso's Statement About Financial Impact. ................................................................................................. 6

   B.   Mr. Caruso's Answer About Financial Impact Was Accurate. ........... 9

   C.   Plaintiff Has Not Adequately Alleged Scienter. ................................ 10

III. Two of Plaintiff's Surviving Claims Should Be Dismissed ........................ 11

   A.   The Court May Dismiss Plaintiff's Surviving Claims Notwithstanding Rule 12(g)(2). ......................................................... 11

   B.   Ms. Goggins' Motrin Retrieval Statement Is Not Actionable. .......... 12

   C.   Mr. Caruso's Statements About Quality Issues Were Not Fraudulent. ......................................................................................... 13

Conclusion .......................................................................................................... 15

i

## TABLE OF AUTHORITIES

Page(s)

CASES

*Backman v. Polaroid Corp.*,
  910 F.2d 10 (1st Cir. 1990) (en banc) ................................................................. 5

*Berckeley Inv. Grp., Ltd. v. Colkitt*,
  455 F.3d 195 (3d Cir. 2006) ................................................................................ 3

*Bricklayers & Masons Local Union No. 5 Ohio Pension Fund v. Transocean Ltd.*,
  2012 WL 1080366 (S.D.N.Y. Mar. 30, 2012) ...................................................... 3

*Brown v. City of Essex Cnty.*,
  2011 WL 3610268 (D.N.J. Aug. 16, 2011) ........................................................ 12

*Freudenberg v. E*Trade Fin. Corp.*,
  712 F. Supp. 2d 171 (S.D.N.Y. 2010) ................................................................. 3

*Hoxworth v. Blinder, Robinson & Co., Inc.*,
  903 F.2d 186 (3d Cir. 1990) ................................................................................ 6

*In re Aetna, Inc. Sec. Litig.*,
  617 F.3d 272 (3d. Cir. 2010) ............................................................................... 7

*In re ATI Techs., Inc., Sec. Litig.*,
  216 F. Supp. 2d 418 (E.D. Pa. 2002) ................................................................... 5

*In re Bank of Am. Corp. Sec. Derivative & ERISA Litig.*,
  2011 WL 3211472 (S.D.N.Y. July 29, 2011) ..................................................... 10

*In re Bank of Am. Corp. Sec. Derivative & ERISA Litig.*,
  757 F. Supp. 2d 260 (S.D.N.Y. 2010) ............................................................... 14

*In re Bradley Pharm., Inc. Sec. Litig.*,
  421 F. Supp. 2d 822 (D.N.J. 2006) ...................................................................... 4

*In re Bristol-Myers Squibb Sec. Litig.*,
  2005 WL 2007004 (D.N.J. Aug. 17, 2005) .................................................... 7, 10

*In re Burlington Coat Factory Sec. Litig.*,
 114 F.3d 1410 (3d Cir. 1997) .................................................................................8

*In re Cell Pathways Inc. Sec. Litig.*,
 2000 WL 805221 (E.D. Pa. June 20, 2000)...........................................................6

*In re Cendant Corp. Litig.*,
 60 F. Supp. 2d 354 (D.N.J. 1999).........................................................................9

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
 574 F.3d 29 (2d Cir. 2009) ...................................................................................3

*In re Globalstar Sec. Litig.*,
 2003 WL 22953163 (S.D.N.Y Dec. 15, 2003).....................................................10

*In re NAHC, Inc. Sec. Litig.*,
 2001 WL 1241007 (E.D. Pa. Oct. 17, 2001) .......................................................12

*In re Take-Two Interactive Sec. Litig.*,
 551 F. Supp. 2d 247 (S.D.N.Y. 2008) ..................................................................4

*In re Teco Energy, Inc. Sec. Litig.*,
 2006 WL 2884960 (M.D. Fla. Oct. 10, 2006)......................................................3

*In re Tellium, Inc. Sec. Litig.*,
 2005 WL 2090254 (D.N.J. Aug. 26, 2005) .........................................................3

*In re Unisys Corp. Sec. Litig.*,
 2000 WL 1367951 (E.D. Pa. Sept. 21, 2000)......................................................14

*In re Westinghouse Sec. Litig.*,
 90 F.3d 696 (3d Cir. 1996) ..............................................................................7, 11

*In re Westinghouse Sec. Litig.*,
 1998 WL 119554 (W.D. Pa. Mar. 12, 1998)................................................11, 12

*Jaroslawicz v. Engelhard Corp.*,
 704 F. Supp. 1296 (D.N.J. 1989).........................................................................6

*Klein v. Gen. Nutrition Co.*,
 186 F.3d 338 (3d Cir. 1999) ...............................................................................12

*McMahan & Co. v. Wherehouse Entm't, Inc.*,
 900 F.2d 576 (2d Cir. 1990) ..................................................................................6

*Nat'l Junior Baseball League v. Pharma Dev. Grp., Inc.*,
 720 F. Supp. 2d 517 (D.N.J. 2010) .......................................................................3

*Operating Local 649 Annuity Trust v. Smith Barney Fund Mgmt. LLC*,
 595 F.3d 86 (2d Cir. 2010) ....................................................................................5

*Oran v. Stafford*,
 226 F.3d 275 (3d Cir. 2000) ..................................................................................5

*Palladin Partners v. Gaon*,
 2006 WL 2460650 (D.N.J. Aug. 22, 2006) ........................................................10

*Penn-Mont Benefit Servs., Inc. v. Crosswhite*,
 2003 WL 203570 (E.D. Pa. Jan. 29, 2003) .........................................................11

*Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*,
 998 F.2d 1192 (3d Cir. 1993) ................................................................................5

*Rowley v. McMillian*,
 502 F.2d 1326 (4th Cir. 1974) ............................................................................12

*Semerenko v. Cendant Corp.*,
 223 F.3d 165 (3d. Cir. 2000) .................................................................................7

*Shapiro v. UJB Fin. Corp.*,
 964 F.2d 272 (3d Cir. 1992) ..................................................................................6

*Steiner v. MedQuist, Inc.*,
 2006 WL 2827740 (D.N.J Sept. 29, 2006) ...........................................................3

*U.S. v. Schiff*,
 602 F.3d 152 (3d Cir. 2010) ..................................................................................5

**OTHER AUTHORITIES**

Fed. R. Civ. P. 1 .........................................................................................................12

Rule 12(g)(2) ...................................................................................................2, 11, 12

Rule 12(h)(1) ..............................................................................................................12

Preliminary Statement

Plaintiff concedes that Dominic J. Caruso's statements about shipping levels and the financial impact of the Fort Washington shutdown were "literally accurate" but argues that there is liability because a defendant may not speak in "half-truths." The argument is premised upon the allegation that Mr. Caruso had a duty to reveal speculative information, ███████████████████████████ ███████████████ and the transcripts demonstrate that Mr. Caruso was careful to limit his remarks to the context that he could address.

The statements are not actionable for other reasons as well, including the safe harbor for forward-looking statements and failure to allege loss causation. Indeed, Plaintiff does not dispute his failure to allege loss causation for Mr. Caruso's April 20, 2010 statement concerning shipping levels—specifically, Plaintiff does not allege that a corrective disclosure regarding shipping levels caused the price of Johnson & Johnson's ("J&J") stock to drop.  Instead, Plaintiff relies on an inapplicable "materialization of the risk" theory that the Third Circuit has not endorsed.  And Plaintiff cannot rebut that Mr. Caruso's May 11, 2010 statement, concerning the financial impact of the Fort Washington shutdown, is not actionable under the PSLRA's safe harbor for forward-looking statements—i.e., it was an estimate accompanied by cautionary language.

Finally, two of Plaintiff's three original claims fail because they allege that

Mr. Caruso and Ms. Goggins misrepresented information that was *already publicly available* and thus could not have misled a reasonable investor. Plaintiff's argument that this defense may not be considered based on Rule 12(g)(2) ignores the Court's discretion to waive the rule to avoid unnecessary delay. Defendants ask that the Court do so here, since the allegations are facially insufficient.

## Argument

### I. Mr. Caruso's Statements About Shipping Levels Are Not Actionable.

#### A. Plaintiff Does Not Allege Loss Causation.

Plaintiff does not allege that Mr. Caruso's supposed omission, on the April 20 analyst call, ▇▇▇▇▇▇▇▇▇▇ ▇▇▇▇ [1] ▇▇▇▇▇▇▇▇▇▇▇▇▇▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇, caused J&J's stock price to drop upon the disclosure of the recall of liquids and the suspension on April 30 and May 4. *See* Mem. in Supp. of Defs.' Mot. to Dismiss, at 25-27, ECF No. 91, Sept. 27, 2012 ("Def. Br."). In fact, the first stock drop that Plaintiff alleges did not occur until May 18, which did not involve shipping levels. *See id.* at 26-27. There is simply no loss causation alleged for Mr. Caruso's statements about shipping levels.

---

[1] 

Plaintiff attempts to overcome this failure by relying on a so-called "materialization of the risk" theory. *See* Pl. Br., at 16. But "the Third Circuit has not endorsed this type of pleading [i.e., materialization of risk] as a way to establish loss causation." *See Nat'l Junior Baseball League v. Pharma Dev. Grp., Inc.*, 720 F. Supp. 2d 517, 563 n.35 (D.N.J. 2010). Rather, in the Third Circuit, "the loss causation element requires the plaintiff to prove that it was the *very facts* about which the defendant lied which caused its injuries." *Berckeley Inv. Grp., Ltd. v. Colkitt*, 455 F.3d 195, 222 (3d Cir. 2006) (internal quotation marks and citation omitted) (emphasis added).

Further, by its terms the "materialization of risk" theory does not apply here. As Plaintiff's own cases show, the theory applies when the allegedly concealed information has not been fully disclosed and there is a materialization of that *concealed* risk.[2] By contrast, here, before the risk allegedly "materialized"—i.e., via the disclosure of the financial impact of J&J's decreased shipping levels or the

---

[2] *See In re Tellium, Inc. Sec. Litig.*, 2005 WL 2090254, at *3 (D.N.J. Aug. 26, 2005) (Wolfson, J.) (theory involves materialization of "undisclosed" information); *Steiner v. MedQuist, Inc.*, 2006 WL 2827740, at *20 (D.N.J Sept. 29, 2006) (same); *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 574 F.3d 29, 40 (2d Cir. 2009) (theory involves materialization of a "concealed" risk); *In re Teco Energy, Inc. Sec. Litig.*, 2006 WL 2884960, at *6 (M.D. Fla. Oct. 10, 2006) (same); *Bricklayers & Masons Local Union No. 5 Ohio Pension Fund v. Transocean Ltd.*, 2012 WL 1080366, at *18 (S.D.N.Y. Mar. 30, 2012) (same); *Freudenberg v. E*Trade Fin. Corp.*, 712 F. Supp. 2d 171, 202 (S.D.N.Y. 2010) (same).

announcement of the federal investigation on July 20, 2010, *see* Pl. Br., at 20[3]—J&J had already *fully* disclosed the information that was allegedly concealed. Second Am. Compl. ¶¶ 188, 191, 195, Sept. 7, 2012, ECF 83 ("SAC"). There is no allegation that J&J's stock price fell with full disclosure. Thus, the allegations are inadequate even under a "materialization of risk" theory.

B.  Mr. Caruso's Statements About Shipping Levels Were Accurate.

Mr. Caruso expressly referred back to Louise Mehrotra's earlier remarks, which related solely to the limited subset of OTC products that were "impacted" by the Las Piedras recall. The transcript makes clear that his comments, like hers, did not relate to McNeil's OTC business as a whole. *See* Def. Br., at 21-23.

Despite this express limitation, Plaintiff argues that Mr. Caruso's statements were misleading because "it is not plausible that investors implicitly understood" Mr. Caruso's response "to be limited by the earlier statement of his subordinate, Mehrotra." Pl. Br., at 12. That earlier statement was *the very basis* for the analyst's question that Mr. Caruso answered. *See* Phillips Decl., Ex. A, at 13 ("just to *follow up* on OTC") (emphasis added). And Mr. Caruso *explicitly* limited his

---

[3] *In re Bradley Pharm., Inc. Sec. Litig.*, 421 F. Supp. 2d 822 (D.N.J. 2006) and *In re Take-Two Interactive Sec. Litig.*, 551 F. Supp. 2d 247 (S.D.N.Y. 2008) do not support a finding of loss causation from J&J's announcement of a federal investigation. *See* Pl. Br., at n.7. Both cases found that announcements of government investigations were sufficient to plead loss causation when the announcements disclosed previously *undisclosed* information. *See Bradley*, 421 F. Supp. 2d at 828-29; *Take-Two Interactive*, 551 F. Supp. 2d at 289-90.

response by referring to Ms. Mehrotra's earlier statements. *See* Def. Br., at 21-23.[4]

Moreover, Mr. Caruso did not have an affirmative duty to volunteer information about shipping levels more broadly. The statement was by no means a "half-truth"—a defendant's decision to disclose some information about an area of its business does not trigger a duty to disclose *everything* about that area, no matter how uncertain or pre-mature. *See In re ATI Techs., Inc., Sec. Litig.*, 216 F. Supp. 2d 418, 434 (E.D. Pa. 2002) (plaintiff not required to disclose losses in design competitions simply because it disclosed wins in such competitions); *Backman v. Polaroid Corp.*, 910 F.2d 10, 16 (1st Cir. 1990) (en banc) ("[the duty to disclose] does not mean that by revealing one fact about a product, one must reveal all others that, too, would be interesting, market-wise[.]").[5]

---

[4] Plaintiff attempts to mute the significance of these facts by arguing that "the Court must accept all well-pleaded allegations in the complaint as true." *See* Pl. Br., at 10, n.1. However, Mr. Caruso's explicit reference to Ms. Mehrotra's earlier statements is reflected in the full transcript of the earnings call. *See* Phillips Decl., Ex. A, at 3, 14. And it is black-letter law that the Court can consider the full text of documents upon which a plaintiff relies in its complaint. *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993).

[5] *Oran v. Stafford*, 226 F.3d 275 (3d Cir. 2000), which Plaintiff cites in support of his effort to label Mr. Caruso's statement a "half-truth," finds in Defendants'—not Plaintiff's—favor on this point. The Third Circuit rejected the argument that the defendant's statements were incomplete and misleading because the alleged omission was "purely speculative." *Id.* at 286. And none of the cases that Plaintiff cites for a broader disclosure duty involves analogous facts—i.e., where a defendant is asked a narrow question that he answers directly. *See U.S. v. Schiff*, 602 F.3d 152, 162 (3d Cir. 2010) (corporate executive did not have "a fiduciary duty to rectify [his colleague's] allegedly material misstatements on analyst calls in subsequent SEC filings"); *Operating Local 649 Annuity Trust v. Smith Barney Fund Mgmt. LLC*, 595 F.3d 86, 90, 93 (2d Cir. 2010) (firm's disclosure to mutual funds' board of directors was inadequate because firm failed to disclose provision in transfer agent contract that overcharged the funds and allowed firm to profit at (continued…)

### C. Plaintiff Does Not Adequately Allege Scienter.

██████████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████

███ There is no allegation that Mr. Caruso acted with scienter when he omitted mention of Fort Washington in his statements about shipping levels.

## II. Mr. Caruso's Statement About Financial Impact Is Not Actionable.

### A. The PSLRA's Safe-Harbor Provision for Forward-Looking Statements Protects Mr. Caruso's Statement About Financial Impact.

Plaintiff does not dispute that Mr. Caruso's statement about financial impact was identified as forward looking, but argues instead that Mr. Caruso's cautionary

---

the funds' expense); *McMahan & Co. v. Wherehouse Entm't, Inc.*, 900 F.2d 576, 579-81 (2d Cir. 1990) (discussing whether offering memo was misleading because memo—when read as a whole—created an allegedly illusory right to tender shares); *Shapiro v. UJB Fin. Corp.*, 964 F.2d 272, 282 (3d Cir. 1992) (discussing whether generalized statements about a particular management practice are actionable as fraud); *Hoxworth v. Blinder, Robinson & Co., Inc.*, 903 F.2d 186, 200 (3d Cir. 1990) (discussing whether broker-dealer had a duty to disclose price markups and markdowns that were "far in excess of [regulatory] guidelines"); *Jaroslawicz v. Engelhard Corp.*, 704 F. Supp. 1296, 1300-05 (D.N.J. 1989) (discussing whether defendants' serial public comments over a multiple-year period about the health of its refining operations triggered a duty to disclose extensive problems in those operations); *In re Cell Pathways Inc. Sec. Litig.*, 2000 WL 805221, at *4 (E.D. Pa. June 20, 2000) (discussing whether drug company's positive statements about potential new drug were misleading because company allegedly knew of flaws in clinical trials).

language was insufficient.[6]  At the outset of the May 11, 2010 call, Mr. Caruso explicitly cautioned that he may make forward-looking statements and referred participants to J&J's public filings.  *See* Phillips Decl., Ex. B, at 2.  J&J's then-recently filed 10-K stated that forward-looking statements may be identified by words such as "estimates" and that their accuracy could be affected by "[p]roduct efficacy or safety concerns…resulting in product withdrawals, recalls, regulatory action on the part of the FDA…or declining sales."  *Id.*, Ex. F, at 1, 3.[7]  Mr. Caruso also cautioned investors about the accuracy of the analyst's estimate when he discussed it.  *See* Def. Br., at 30-31.

---

[6] Plaintiff cites several cases for the proposition that allegations based on omissions of "*existing* facts or circumstances" do not qualify a forward-looking statements. *See* Pl. Br., at 29 (emphasis added).  These cases are inapposite because Plaintiff's allegations are based on alleged omissions of projections, not "existing facts."

[7] This cautionary language is similar to the language in other cases that have applied the safe harbor.  *See In re Aetna, Inc. Sec. Litig.*, 617 F.3d 272, 283 (3d. Cir. 2010) (statement in public filings that there was "no assurance regarding the accuracy of medical cost projections" was sufficient warning) (internal quotation marks and citation omitted); *In re Bristol-Myers Squibb Sec. Litig.*, 2005 WL 2007004, at *53-*54 (D.N.J. Aug. 17, 2005) (statement in press release that "there can be no guarantees that products will receive regulatory approvals" was sufficient warning); *see also* Def. Br., at 31-32 (discussing cases).

*In re Westinghouse Sec. Litig.*, 90 F.3d 696 (3d Cir. 1996) and *Semerenko v. Cendant Corp.*, 223 F.3d 165 (3d. Cir. 2000), cited by Plaintiff, are inapposite.  First, since *Westinghouse* is a pre-PSLRA case and *Semerenko* involved a tender offer, neither evaluated the claims under the PLSRA's statutory safe harbor.  *See Westinghouse*, 90 F.3d at 707; *Semerenko*, 223 F.3d at 182 n.12.  Also, the cautionary language in both cases was significantly different.  *See Westinghouse*, 223 F.3d at 709-10 (cautionary language insufficient because it did not caution against possibility that loss reserves were inadequate under current economic conditions whereas, here, Mr. Caruso warned about accuracy of estimate); *Semerenko*, 223 F.3d 165 at 183 (cautionary language insufficient because it did not explain why financial statement calculations might be incorrect whereas, here, J&J's 10-K stated multiple reasons why projections might be incorrect).

Plaintiff also argues that the safe harbor is inapplicable because Mr. Caruso knew that his statement was materially misleading. This is hardly true, as *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410 (3d Cir. 1997), upon which Plaintiff relies, explains. *See* Pl. Br., at 30-31. There, the Third Circuit found that a corporate officer adopted an analyst's projection because the officer said that he was "comfortable" with it. *Burlington*, 114 F.3d at 1429. But the court noted that its finding was not intended "to discount the possibility of situations where the expression of agreement is so unenthusiastic that no reasonable investor would attach relevance to it." *Id.* at 1429 n.15.

Mr. Caruso did not even adopt the analyst's figure, let alone adopt it with enthusiasm. The analyst asked him if a $200- to $300-million impact for the Fort Washington liquids recall was "in the right ballpark." Phillips Decl., Ex. B, at 4. Rather than endorse the figure, Mr. Caruso began his answer by explaining, "Well, as you know, we don't disclose products at all levels in the Company, and these products are below the level that we typically disclose, so I'm not going to disclose the level." *Id.* After that caveat, he said: "[a]nd if you refer to published sources, the estimate you provided earlier is not unreasonable." *Id.* Mr. Caruso also specifically warned the participants that "we are still evaluating the situation and refining our estimates" and that "the ultimate resumption of production and shipment is really not known at this time." *Id.* at 5. Thus, in line with *Burlington*,

-8-

Mr. Caruso's statement was immaterial as a matter of law.[8]

### B. Mr. Caruso's Answer About Financial Impact Was Accurate.

Mr. Caruso's answer about financial impact referred solely to the impact of the recall of *liquid* products, not to the impact of suspension of production at Fort Washington, which resulted in shipping delays for both liquid *and* solid products. *See* Def. Br., at 28-30. Mr. Caruso limited his answer in this way because the analyst asked him *only* about "the recall." *See* Phillips Decl., Ex. B, at 4. Had the analyst been interested in the broader financial impact, he could have asked—the suspension was no secret; J&J publicly announced that it had suspended production at Fort Washington on May 4. SAC ¶ 195.[9]

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

---

[8] Moreover, unlike the defendants in Plaintiff's cases, Mr. Caruso had a reasonable basis for making the statements. *See, e.g., In re Cendant Corp. Litig.*, 60 F. Supp. 2d 354, 375 (D.N.J. 1999) (alleged misrepresentations involved "certaint[ies]," not "possibilit[ies]"); *see also* Def. Br., at 28-30, 33; *see infra* at Section II.B.

[9] Plaintiff mistakenly claims that "Defendants *concede* that 'Caruso's statement to [the analyst]…was a response to a long term estimate about the impact of the Fort Washington recall *and suspension of production*.'" Pl. Br., at 26 (quoting Def. Br., at 30) (emphasis in Pl. Br.). Defendants referred not to the "suspension of production" generally but to the suspension of production of the recalled products—i.e., liquid products. *See* Def. Br., at 30; *cf. id.* at 23 n.3.

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

Plaintiff argues that such uncertain projections can be the basis for securities fraud, but the cases Plaintiff cites involve projections that are qualitatively different from the statements at issue.[10]

### C. Plaintiff Has Not Adequately Alleged Scienter.

Plaintiff relies on nothing more than hindsight in arguing that Mr. Caruso's statement about the analyst's estimate was intentionally misleading. First, the transcript of the May 11, 2010 call shows that Mr. Caruso referred specifically to the financial impact of the recall of only children's *liquid* OTC products. *See* Def. Br., at 33 (citing Phillips Decl., Ex. B, at 4-5). ████████████████████

---

[10] *See, e.g., Palladin Partners v. Gaon*, 2006 WL 2460650, at *8 (D.N.J. Aug. 22, 2006) (alleged misrepresentations involved "specific predictions"); *In re Globalstar Sec. Litig.*, 2003 WL 22953163, at *6 (S.D.N.Y Dec. 15, 2003) (plaintiffs alleged that defendants *repeatedly, over a period of months*, projected annual revenue of $300 million even though defendants knew that company was on pace for less than $1 million in revenue for first half of year); *see also In re Bank of Am. Corp. Sec. Derivative & ERISA Litig.*, 2011 WL 3211472, at *6 (S.D.N.Y. July 29, 2011) (plaintiffs alleged that defendants knew of—but did not disclose—*billions* of dollars in losses).

*Bristol-Myers Squibb*, also cited by Plaintiff, supports Defendants, not Plaintiff. There, the court found that companies have significant latitude when making statements about projections. *Bristol-Myers Squibb*, 2005 WL 2007004, at *3, *60 (plaintiff alleged that projection showing drug would earn only $400 million in annual sales made defendant's statement that drug would be a "blockbuster" misleading, but court found that statement was not actionable because defendant's alternative projection of $800 million in sales was "surely [] close enough" to plaintiff's $1 billion definition of "blockbuster" "to make it reasonable").

██████████████████████████████████

██████████████████████████████████

████[11] Thus, based on the information available to Mr. Caruso at the time, his statements could not have been intentionally misleading.

### III. Two of Plaintiff's Surviving Claims Should Be Dismissed.

#### A. The Court May Dismiss Plaintiff's Surviving Claims Notwithstanding Rule 12(g)(2).

Third Circuit law does not bar dismissal of Plaintiff's surviving claims. As the Hon. D. Brooks Smith explained in *In re Westinghouse Securities Litigation*, 1998 WL 119554 (W.D. Pa. Mar. 12, 1998), a defendant may move to dismiss surviving claims based on grounds that could have been asserted earlier:

> There is simply no reason to put…both defendant and plaintiff to the time and expense of addressing an issue to be raised later in a motion for judgment on the pleadings, when the issue can easily be resolved now.

*Id.* at *6. Judge Smith's ruling is not limited to the specific facts of *Westinghouse*. To the contrary, he cited numerous cases from a variety of jurisdictions to support the general proposition that courts may waive Rule 12(g)(2). *Id.*; *see also Penn-Mont Benefit Servs., Inc. v. Crosswhite*, 2003 WL 203570, at *6 (E.D. Pa. Jan. 29,

---

[11] ██████████████████████████████████
██████████████████████████████████
██████████████████████████████████
██████████████████████████████████

2003) (waiving Rule 12(g)(2) is "consistent with this Court's duty to construe and administer the Federal Rules so as to secure the 'just, speedy, and inexpensive determination of every action.'" (quoting Fed. R. Civ. P. 1)).[12]

In *Brown v. City of Essex County*, 2011 WL 3610268 (D.N.J. Aug. 16, 2011), this Court allowed a second motion to dismiss because it did not "prejudice or inconvenience the Plaintiff." *Id.* at *3-4 (citing *Westinghouse*, 1998 WL 119554, at *6). Plaintiff has identified no prejudice arising from Defendants' renewed motion to dismiss and consideration now will save the resources of the parties and the Court by eliminating these faulty claims.

B.     <u>Ms. Goggins' Motrin Retrieval Statement Is Not Actionable.</u>

Plaintiff's only response to Defendants' arguments that Ms. Goggins' statement about the Motrin retrieval was not fraudulent—because the Motrin retrieval had already been announced—is a footnote asserting that Defendants' arguments "raise factual questions concerning materiality and loss causation that are reserved for the fact-finder." *See* Pl. Br., at 40 n.18. Plaintiff ignores the Third Circuit's holding that allegedly misrepresented information that is public at the time of a defendant's statement is "immaterial as a matter of law." *Klein v. Gen. Nutrition Co.*, 186 F.3d 338, 342-43 (3d Cir. 1999); *see also In re NAHC, Inc. Sec.*

---

[12] As Judge Smith points out, *Rowley v. McMillian*, 502 F.2d 1326, 1332 (4th Cir. 1974), upon which Plaintiff relies, is inapposite because it involves a subsequent motion to dismiss for lack of personal jurisdiction, which is "specifically subjected to waiver by Rule 12(h)(1)." *Westinghouse*, 1998 WL 119554, at *6 n.4.

*Litig.*, 2001 WL 1241007, at *16 (E.D. Pa. Oct. 17, 2001) (dismissing allegation that company overstated goodwill in 10-K because proxy materials already reflected total elimination of goodwill).

Here, Plaintiff does not dispute that the Motrin retrieval was publicly disclosed at least three times *before* Ms. Goggins testified on May 27, 2010. *See* Def. Br., at 36 (citing Phillips Decl., Ex. C, at 2, 7). Also, Plaintiff does not respond to the argument that the SAC fails to allege loss causation in connection with Ms. Goggins' statement. Specifically, Plaintiff does not explain how Ms. Goggins' statement could have inflated J&J's share price given that Representative Towns disclosed the retrieval *before she ever spoke*. Nor does Plaintiff explain the fact he has not alleged a drop in J&J's share price as a result of a corrective disclosure after Ms. Goggins' testimony. *See* Def. Br., at 37-38.

C.   Mr. Caruso's Statements About Quality Issues Were Not Fraudulent.

Similarly, Plaintiff could not have been defrauded by Mr. Caruso's May 11, 2010 statements about quality issues at McNeil because the information that Mr. Caruso allegedly failed to disclose *was already public*. *See id.*, at 38-39. Plaintiff tries to hide behind procedural niceties by arguing that investor reliance is a fact question that cannot be decided on a motion to dismiss. *See* Pl. Br., at 39. But the cases that Plaintiff cites as support for this argument are inapposite: Plaintiff's cases involve information that was only nominally public because, unlike the

-13-

disclosures here, it was not widely transmitted to the public.[13]

By the time Mr. Caruso spoke on May 11, 2010, J&J had announced three different TBA-related recalls and the FDA had posted its warning letter and Form 483 for Las Piedras on its website. *See* Def. Br. 38-39. On May 4, McNeil had announced that it had suspended operations at Fort Washington because of quality concerns. SAC ¶ 195. The FDA had also held a press conference, at which it announced that it had what Plaintiff calls an "extraordinary" meeting with J&J and McNeil. *Id.* ¶¶ 189, 194. The FDA called the press conference because there was "a great deal of interest from consumers and the media." SAC ¶ 192.

Plaintiff asserts that this publicly available information had not alerted the market to "the *systemic* and *ongoing* nature of quality control problems at J&J." Pl. Br. 39-40 (emphases in original). But Plaintiff himself alleges that the warning letter expressed concern about McNeil's general quality control procedures, Def. Br., at 39 (citing Phillips Decl., at ¶ 3), and that the FDA had publicly expressed "serious concerns about McNeil's manufacturing operations." *Id.* at 39 (citing SAC ¶ 194).

---

[13] *See, e.g., In re Unisys Corp. Sec. Litig.*, 2000 WL 1367951, at *4 (E.D. Pa. Sept. 21, 2000) (stating that "[i]t is well settled that there is no liability under the security laws because of an alleged failure to disclose information that is already available to the public," but declining to dismiss complaint because investor had to pass through two websites to find the contract at issue); *In re Bank of Am. Corp. Sec. Derivative & ERISA Litig.*, 757 F. Supp. 2d 260, 302 (S.D.N.Y. 2010) (newspaper articles did not provide enough context to dismiss complaint).

All of this information was public by May 11.  Put another way, there was nothing new that Mr. Caruso could have disclosed on the May 11 call, and Plaintiff cites to nothing other than vague statements about "systemic" quality issues.  The claim should be dismissed.

## Conclusion

For the foregoing reasons, Defendants respectfully request that the Court dismiss all of Plaintiff's claims except those based upon Mr. Caruso's alleged omission of the Motrin retrieval.

Dated:  November 12, 2012

Respectfully submitted,

/s/ Christina Olson
Christina Olson
C. William Phillips
Covington & Burling LLP
The New York Times Building
620 Eighth Avenue
New York, New York 10018
Tel:  (212) 841-1000
colson@cov.com
cphillips@cov.com

/s/ Peter C. Harvey
Peter C. Harvey
Patterson Belknap Webb & Tyler LLP
1133 Avenue of the Americas
New York, New York 10036
Tel: (212) 336-2000
pcharvey@pbwt.com

*Attorneys for Defendants*