IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| RONALD MONK, Individually and on behalf All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>JOHNSON & JOHNSON, WILLIAM C. WELDON, DOMINIC J. CARUSO, COLLEEN A. GOGGINS and PETER LUTHER,<br><br>Defendants. | Civil Action No. 10-4841 (FLW) (DEA) |

**OBJECTIONS TO PROPOSED SETTLEMENT AND
NOTICE OF INTENT TO APPEAR**

<u>INTRODUCTION</u>

ORLOFF FAMILY TRUST DTD 12/13/01, ORLOFF FAMILY TRUST DTD 10/03/91 and DR. MARSHALL ORLOFF IRA R/O ("Objectors"), through their counsel (i) file these objections to the Proposed Class Action Settlement (the "Proposed Settlement") (ii) object to Class Counsel's notice of motion and motion for attorneys' fees; and (iii) give notice of their counsel's intent to appear at the final fairness settlement hearing.

Objectors represent to the court they are each class members who purchased the stock as defined in the Settlement Agreement. Marshall Orloff, MD certifies objectors will provide their trade information in a supplemental filing prior ot the final approval hearing as soon as it is provided by the brokers. A copy of the notice sent to objectors is attached as Exhibit A.

I.  THE SETTLEMENT IS UNFAIR TO THE CLASS

It is well established that the court has a duty under Rule 23 of the Federal Rules of Civil Procedure as the guardian of the absent class members' interests to independently determine whether the settlement agreement is fair, reasonable, and in the best interests of the class.

The court has a "duty under Rule 23 of the Federal Rules of Civil Procedure to protect absent class members and to police class action proceedings." *Strong v. Bellsouth Telecommunications, Inc.*, 137 F.3d 844, 849 (5th Cir. 1998). In order to approve a proposed settlement, the court must be satisfied that the agreement is "fair, adequate, and reasonable," and not the product of fraud or collusion. *Stoetzner v. United States Steel Corp.*, 897 F.2d 115, 118 (3d Cir. 1990); *Walsh v. Great Atlantic & Pacific Tea Co.*, 726 F.2d 956, 965 (3d Cir. 1983); *Greenfield v. Villager Industries, Inc.*, 483 F.2d 824, 833 (3d Cir. 1973). The duty requires a review of substantive claims included in the agreement and an investigation into the manner in which fees of class counsel are to be paid and the dollar amount for such services. *Strong v. Bellsouth Telecommunications, Inc.*, 137 F.3d 844, 849 (5th Cir. 1998). The 2003 Committee Notes to Rule 23(h) state that "[a]ctive judicial involvement in measuring fee awards is singularly important to the proper operation of the class-action process. Continued reliance on case law development of fee-award measures does not diminish the court's responsibility. In a class action, the district court must ensure that the amount and mode of payment of attorney fees are fair and proper whether the fees come from a common fund or are otherwise paid. Even in the absence of objections, the court bears this responsibility." Committee Notes to Rule 23(h), 2003.

Rule 23(e) of the Federal Rules of Civil Procedure provides that "[a] class action shall not be dismissed or compromised without approval of the court, and notice of the proposed

dismissal or compromise shall be given to all members of the class in such manner as the court directs." A settlement may only be approved after the court finds it is fundamentally fair, adequate and reasonable. *Id*. This rule has been read as a requirement for the court to "'Independently and objectively analyze the evidence and circumstances before it in order to determine whether the settlement is in the best interest of those whose claims will be extinguished.'" *In re Cendant Corp. Litig.*, 264 F.3d 201, 231 (3rd Cir. 2001), citing *In re General Motors Corp. Pickup Truck Fuel Tank Prod. Liab. Litig.*, 55 F.3d 768, 785 (3rd Cir. 1995) (emphasis added).

## II. ATTORNEYS FEE REQUEST MUST BE CLOSELY EXAMINED

Every dollar paid to attorneys is unavailable to the class, thereby demonstrating a direct and inverse relationship between the amount of relief and the amount of attorney fees. Dozens of cases have confirmed and identified the court's fiduciary rule. For example.

> Before considering the proper methodology for awarding attorney's fees out of a common fund, the Court feels compelled to define its role in these proceedings. When an attorney makes a claim for fees from a common fund, his interest is adverse to the interest of the class in obtaining recovery because the fees come out of the common fund set up for the benefit of the class. *Rawlings v. Prudential-Bache Properties, Inc.*, 9 F.3d 513, 516 (6th Cir. 1993). This divergence of interest requires a court to assume a fiduciary role when reviewing a fee application because there is often no one to argue for the interests of the class: class members with small individual stakes in the outcome will often fail to file objections because they lack the interest or resources to do so and the defendant who contributed to the fund will usually have scant interest in how the fund is divided between the plaintiffs and class counsel. *In Re Copley Pharmaceutical, Inc.*, 1 F.Supp2d 1407 (Wyoming 1998)

In *Wise v. Popoff, et. al.*, 835 F.Supp 977 (E.D. Mich. 1993) the court describes the roles as follows:

> An attorney's role changes once he files a fee petition. No longer a fiduciary for his client, he becomes nothing more complex than another claimant against the fund created for the client's benefit. The court must, in turn, become "the fiduciary for the fund's beneficiaries and must carefully monitor

disbursement to the attorneys by scrutinizing the fee applications." *Skelton v. General Motors Corp.*, 860 F. 2d 250, 253 (7th Cir. 1988), cert denied, 493 U.S. 810, 110 S. Ct. 53, 107 L. Ed. 2d 22 (1989)  A court should not "rubber stamp" fee applications.  *In re Cincinnati Gas & Electric Co. Securities Litigation,* 643 F.Supp 148, 152 (S.D. Ohio 1986).

The fact that the settling defendant may agree with the fee application is irrelevant to the Court's analysis because the defendant, having already paid the settlement amount, has little interest in the portion of the fund that Class Counsel obtains.  Therefore, this Court must act as a fiduciary to the Class, carefully evaluating the basis for the fee amount.  The Court must no only examine the amount of time expended, but by whom it was expended.  That is, was it a partner, an associate or a contract attorney, and were the rates reasonable for the locale?

### III.   CLASS COUNSEL'S FEE REQUEST IN UNREASONABLY HIGH

There are two basic methods for calculating attorneys' fees:  the percentage-of-recovery method and the lodestar method. Each method has distinct advantages for certain kinds of actions.  The percentage-of-recovery method is generally favored in cases involving a common fund, and is designed to allow courts to award fees from the fund "in a manner that rewards counsel for success and penalizes it for failure.  The lodestar method is more commonly applied in statutory fee-shifting cases, and is designed to reward counsel for undertaking socially beneficial litigation in cases where the expected relief has a small enough monetary value that a percentage-of-recovery method would provide inadequate compensation." *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 333 (3d Cir. 1998)

"Here, Plaintiff's Counsel have devoted over 8,900 hours to the prosecution of the Class' claims against Defendants in this Action, resulting in a total lodestar of $3,959,113.25  *See* Kessler and Cecchi Declarations.  Thus the requested fee award results in the application of an extremely modest 1.16 multiplier to the lodestar."  Memorandum of Law in Support of Lead

4

Counsel's Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses at 15 (footnotes omitted). The request is neither modest nor reasonable. The court must engage in a detailed analysis of counsel's billing to determine the reasonableness of the lodestar calculation. Under such an analysis, the billed charges are unreasonably high.

Further, there is no justification for using a 1.3 multiplier. In a settlement this large, percentages should not persuade; the court must award a reasonable fee based on the actual time and effort by counsel. Additionally, cases awarding large multipliers are mostly obsolete, having been superseded by *Perdue v. Kenny A.*, 130 S. Ct. 1662 (2010). "[T]here is a strong presumption that the lodestar is sufflcient" without an enhancement multiplier. *Id.* at 1669. A lodestar enhancement is only justified in "rare and exceptional" circumstances where "specific evidence" demonstrates that an unenhanced "lodestar fee would not have been adequate to attract competent counsel." *Id.* at 1674. *Kenny A*'s limitation on enhancements was made in the context of interpreting 42 U.S.C. § 1988's language of "reasonable" fee awards, but there's little justification for claiming that "reasonable" in § 1988 means something different than "reasonable" in class action fee awards made under Federal Rules of Civil Procedure 23(h). *See e.g., Van Horn v. Nationwide Prop & Cas. Ins. Co.*, 436 Fed. Appx. 496, 500 (6th Cir. 2011); *Gonzalez v. S. Wine & Spirits of Am., Inc.*, No. 11-cv-5849, 2012 U.S. Dist. LEXIS 46401, at \*12-\*16 (C.D. Cal. Mar. 29, 2012) (citing *Kenny A* and denying enhancement multiplier of 1.5); *Weeks v. Kellog Co.*, No. 09-cv-8102, 2011 U.S. Dist. LEXIS 155472, at \*129-\*135 & n.157 (C.D. Cal. Nov. 23, 2011) (citing *Kenny A* and finding "little basis for an application of a multiplier" when calculating lodestar cross-check); *Winston & Strawn LLP v. FDIC*, 894 F.Supp. 2d 115, 130 (D.D.C. 2012) (rejecting argument attempting to confine *Kenny A* to federal statutory fee shifting awards); *cf. also In re Pet Food Prods. Liab. Litig.*, 629 F.3d 333, 361 (3d

Cir. 2010) (Weis, J. concurring/dissenting) (referring to *Perdue* as an "analgous statutory fee-shifting case.").

## IV.     LOW NUMBER OF OBJECTIONS IS NOT EVIDENCE

Any class action settlement will produce only a small percentage of objectors. The predominating response is always apathy because objectors—unless they can obtain *pro bono* counsel—must expend significant resources on an enterprise that will create little direct benefit for themselves.  Another common response from non-lawyers will be the affirmative avoidance, whenever possible, of anything involving a courtroom. Maybe class counsel will once again argue that class members' understandable tendency to ignore notices or free-ride on the work of other objectors is best understood as acquiescence in or evidence of support for the settlement. This is wrong. Silence is *not* consent. *Grove v. Principal Mut. Life Ins. Co.*, 200 F.R.D. 434, 447 (S.D. Iowa 2001) (*citing In re Gen. Motors Pick-Up Litig.,* 55 F.3d at 789.). "Silence may be a function of ignorance about the settlement terms or may reflect an insufficient amount of time to object. But most likely, silence is a rational response to any proposed settlement even if that settlement is inadequate. For individual class members, objecting does not appear to be cost-beneficial. Objecting entails costs, and the stakes for individual class members are often low." Christopher R. Leslie, *The Significance of Silence: Collective Action Problems and Class Action Settlements*, 59 FLA. L. REV. 71, 73 (2007); Order at 11 ("For a settlement that offered most people no monetary benefit, and a $3 maximum, objecting to the settlement was not a cost-effective proposition.").

There is usually little hope that opt-outs can recover for their claims—the entire purpose of class actions is to aggregate claims that would be uneconomical to bring individually. "Almost by definition, most class members have too little at stake to warrant opting out of the class litigation and filing an individual lawsuit.  Opting out is probably not a viable option even

6

though a proposed settlement is unfair or inadequate." *Id.* at 109. Without *pro bono* counsel to look out for the interests of the class, filing an objection is economically irrational for any individual. "[A] combination of observations about the practical realities of class actions has led a number of courts to be considerably more cautious about inferring support from a small number of objectors to a sophisticated settlement." *In re Gen. Motors Pick-Up Litig.*, 55 F.3d at 812 (*citing In re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 217-18 (5th Cir. 1981)); *cf. Petruzzi's, Inc. v. Darling-Delaware Co.*, 880 F. Supp. 292, 297 (M.D. Pa. 1995) ("'[T]he silence of the overwhelming majority does not necessarily indicate that the class as a whole supports the proposed settlement . . . . '"). "[A] low number of objectors is almost guaranteed by an opt-out regime, especially one in which the putative class members receive notice of the action and notice of the settlement offer simultaneously." *Ellis v. Edward D. Jones & Co.*, 527 F. Supp. 2d 439, 446 (W.D. Pa. 2007). "[W]here notice of the class action is, again as in this case, sent simultaneously with the notice of the settlement itself, the class members are presented with what looks like a *fait accompli*." *Mars Steel Corp. v. Continental Illinois Nat'l Bank & Trust Co.*, 834 F.2d 677, 680-681 (7th Cir. 1987). "Acquiescence to a bad deal is something quite different than affirmative support." *In re General Motors Corp. Engine Interchange Litigation*, 594 F.2d 1106, 1137 (7th Cir. 1979) (reversing approval of settlement).

When class members have little at stake, where each class member's recovery will likely be a single digit, response will be predictably low.  Low response is not akin to an election or public opinion poll. *See In re Gen. Motors Pick-Up Litig.*, 55 F.3d at 813 (finding that "class reaction factor" does not weigh in favor of approval, even when low number of objectors in large class, when "those who did object did so quite vociferously"); Theodore Eisenberg & Geoffrey Miller, *The Role of Opt-Outs and Objectors in Class Action Litigation: Theoretical and

7

*Empirical Issues*, 57 VAND. L. REV. 1529, 1532 (2004). It is not an average citizen's time to object: the likelihood one additional objection will be decisive, when multiplied by the slight increase in an individual class member's payout that such an objection would produce, makes individually-funded objections a losing proposition.

The Court must act as a guardian for *all* class members—whether or not they have formally entered the case by registering an objection. "[T]he absence or silence of class parties does not relieve the judge of his duty and, in fact, adds to his responsibility." *Amalgamated Meat Cutters & Butcher Workmen v. Safeway Stores, Inc.*, 52 F.R.D. 373, 375 (D. Kan. 1971). The Court should draw no inference in favor of the settlement from the number of objections, especially given the vociferousness of the objectors. *In re Gen. Motors Pick-Up Litig.*, 55 F.3d at 812-13; *ALI Principles* § 3.05, *comment a* at 206.

## V. NOTICE OF JOINDER IN OTHER OBJECTIONS

These Objectors join in and adopt as though fully stated here the objections, arguments and motions stated in all other meritorious, bona fide objections.

## CONCLUSION

WHEREFORE, this Objector respectfully requests this Court:

    A. Upon proper hearing, sustain these objections;

    B. Upon proper hearing, enter such Orders as are necessary and just to adjudicate these objections and to alleviate the inherent unfairness, inadequacies and unreasonableness of the proposed settlement.

    Respectfully submitted,

Dated: October 24, 2013    By: ___/s/ Forrest S. Turkish_____
    Forrest S. Turkish (FT1197)
    Law Office of Forrest S. Turkish
    595 Broadway
    Bayonne, NJ 07002
    Phone: (201) 339-8866
    Fax: (201) 339-8456
    Email: fsturkish@aol.com

## CERTIFICATE OF SERVICE

I hereby certify that on October 24, 2013, I electronically filed the foregoing with the Clerk of the Court of the United States District Court for the District of New Jersey by using the USDC CM/ECF system.

I certify that all participants in the case who are registered CM/ECF users that service will be accomplished by the USDC CM/ECF system.

    ___/s/ Forrest S. Turkish_____
    Forrest S. Turkish
    Attorney for Objector